UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



**FILED**
**JUN 16 2014**
Clerk, U.S. District and
Bankruptcy Courts

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 08-360 (RCL) |
| ) | |
| PAUL A. SLOUGH, ) | |
| EVAN S. LIBERTY, and ) | |
| DUSTIN L. HEARD, ) | |
| ) | |
| Defendants. ) | |

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 14-107 (RCL) |
| ) | |
| NICHOLAS A. SLATTEN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the Court is the defendants' motion *in limine* to exclude testimony regarding Raven 23's departure from the Green Zone [439]. Upon consideration of the defendants' motion [439], the government's opposition [479], the defendants' reply [496], the applicable law, and for the reasons set forth below, defendants' motion will be GRANTED in part and DENIED in part.

### I. BACKGROUND

Both the District Court and the Court of Appeals for the District of Columbia Circuit have previously described the factual background of this case. *United States v. Slough*, 677 F. Supp. 2d 112, 116–129 (D.D.C. 2009) ("*Slough I*"), *vacated*, 641 F.3d 544, 555 (D.C. Cir. 2011)

("*Slough II*"); *Slough II*, 641 F.3d at 547–49. Thus, the Court will now only highlight the relevant facts and procedural background.

In 2007, the defendants served as diplomatic security contractors employed by Blackwater Worldwide. *Slough I*, 677 F. Supp. 2d at 116. "The defendants were part of a Blackwater Tactical Support Team answering to the call sign 'Raven 23,' whose function was to provide back-up fire support for other Blackwater personal security details operating in Baghdad [, Iraq]." *Id.*

"On September 16, 2007 a car bomb exploded near the Izdihar Compound in Baghdad, where a U.S. diplomat was conferring with Iraqi officials. American security officials ordered a team from Blackwater Worldwide to evacuate the diplomat to the Green Zone." *Slough II*, 641 F.3d at 547. Defendants Slough, Slatten, and Liberty were riding with Raven 23's commander, Jimmy Watson, in the command vehicle, and defendant Heard was riding directly behind in vehicle 4. Gov't Opp'n 1. Upon reaching a checkpoint at the edge of the Green Zone, Watson received an order to remain on standby and not to leave the Green Zone. *Id.* at 4. Watson's communications with the Blackwater Tactical Operations Center ("TOC") were broadcast on a speaker for everyone in the command vehicle to hear, and possibly broadcast in vehicle 4 as well. *Id.*

Watson complied with the order for "probably about two or three minutes," at which point he made a "tactical decision" to proceed to Nisur Square in order to secure a safe evacuation route for the diplomat and the other Blackwater team. Grand Jury Tr. 84:21, 103:21, Mar. 14, 2013, ECF No. 439-2. Watson ordered his team to move out, relayed his decision to Blackwater Command, and was told to return to the Green Zone. *Id.* at 103:22-25. In order to turn the convoy around, Raven 23 had to travel through the traffic circle at Nisur Square. *Id.* at

2

105:2-14. Once in Nisur Square, however, Raven 23 received confirmation from command to "lock down the traffic circle to expedite the travel of [the other Blackwater team] through [the] circle." *Id.* at 106:1-10. Shortly afterward, "a shooting incident erupted, during which the defendants allegedly shot and killed fourteen [Iraqi civilians] and wounded twenty others." *Slough I*, 677 F. Supp. 2d. at 116.

## II. LEGAL STANDARD

"While neither the Federal Rules of Civil Procedure nor the Federal Rules of [E]vidence expressly provide for motions *in limine,* the Court may allow such motions 'pursuant to the district court's inherent authority to manage the course of trials.'" *Barnes v. District of Columbia.*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). "Motions *in limine* are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" *Id.* However, "[f]actual questions should not be resolved through motions *in limine*." *Id.* at 11 (citation omitted). The Court has the "discretion to rule *in limine* or to await developments at trial before ruling." *Graves*, 850 F. Supp. 2d at 11 (citing Stephen A. Saltzburg *et al.*, Federal Rules of Evidence Manual § 103.02[13] (9th ed. 2006)).

Despite this discretion, "the Court should remember that making counsel object to inadmissible evidence at trial may 'emphasize the evidence before the jury.'" *Barnes*, 924 F. Supp. 2d at 79 (quoting *Banks v. District of Columbia*, 551 A.2d 1304, 1310 (D.C. 1988)). "To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." Fed. R. Evid. 103(d).

> Broadly speaking, the Federal Rules of Evidence permit the admission of "relevant evidence"—that is, evidence that "has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence," Fed. R. Evid. 401—provided it is not otherwise excluded by the Rules, the

3

Constitution of the United States, or an Act of Congress, Fed. R. Evid. 402, and its probative value is not "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403.

*Barnes*, 924 F. Supp. 2d at 78 (quoting *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 10 (D.D.C. 2011)).

### III. ANALYSIS

#### *A. Relevance*

The government presents two theories that evidence of Raven 23's commander, Jimmy Watson, disobeying an order not to leave the Green Zone is relevant. First, that Watson's disobedience is related to the credibility of his testimony, possibly making him an impeachable witness. Second, that defendants knew Watson disobeyed the order, and that such knowledge is relevant to defendants' state of mind at the time of the shooting. "Evidence is relevant if: (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevant evidence is admissible" unless the rules of evidence provide otherwise, and "irrelevant evidence is not admissible." Fed. R. Evid. 402. Even if relevant, "[e]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). However, these specific instances may be explored on cross-examination "if they are probative of the [witness'] character for truthfulness or untruthfulness." *Id.*

Evidence otherwise inadmissible may be admitted if it shows bias on the part of the witness. *See United States v. Abel*, 469 U.S. 45, 56 (1984); *see also United States v. Lindemann*, 85 F.3d 1232 (7th Cir. 1996) (holding that admissibility of extrinsic evidence to show bias is governed by Rules 402 and 403, not 608(b)).

4

> Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.

*Abel*, 469 U.S. at 52.

The Court finds that evidence of Watson's disobedience is probative to demonstrate Watson's potential bias, however, any evidence concerning defendants' knowledge of the order is irrelevant and inadmissible.

*1.    Evidence of Watson Disobeying an Order Is Relevant*

The government seeks to introduce evidence showing that Watson disobeyed an order by leading Raven 23 out of the Green Zone and into Nisur Square. By introducing this evidence, the government hopes to impeach Watson's claim that insurgents were present. Gov't Opp'n 3. Defendants moved to exclude this evidence on the basis that it is not relevant under Federal Rule of Evidence 401. Even if relevant, defendants further contend that the evidence is not valid impeachment evidence under Federal Rule of Evidence 608(b) for three reasons: (1) Watson is a government witness who would be impeached on direct examination and the rule only allows for impeachment on cross-examination, (2) disobeying an order does not demonstrate Watson's character for untruthfulness, and (3) there is a categorical bar against using extrinsic evidence of the witness' past conduct to impeach that witness. *See* Defs.'s Reply at 8-9. In short, the Court agrees only with defendants' second argument on the Rule 608(b) issue, but that is sufficient to bar admission of evidence under Rule 608(b).

Raised for the first time during oral argument, the government also suggests that evidence of Watson's disobedience should be admissible to show Watson's bias. The Court agrees. "Bias

of a witness is always relevant." *United States v. Anderson*, 881 F.2d 1128, 1136 (D.C. Cir. 1989) (quoting *Villaroman v. United States*, 184 F.2d 261, 262 (D.C. Cir. 1950)). Testimony concerning bias "is permitted even on direct examination." *United States v. Powell*, 124 F.3d 655, 661 (5th Cir. 1997). Thus, as posed by the government, the question is whether Watson, because of his noncompliance with an order not to leave the Green Zone, may have a self-serving incentive to overemphasize his involvement in the shooting at Nisur Square or to falsely claim that insurgents were present. The Court finds that evidence of Watson's disobedience is probative of potential bias.

Compare the two possible scenarios that the jury may hear: (1) if the defendants' motion is granted, Watson takes Raven 23 out in response to a bombing, presumably according to regular protocol, and the unfortunate result is the death of 14 civilians; (2) if the defendants' motion is denied, Watson takes Raven 23 out in response to a bombing, *against orders*, and the unfortunate result is the death of 14 civilians. It is reasonable to infer that a commander may feel more personally responsible for the fallout resulting from the second scenario than the first. He may have an incentive to make the threat appear more severe than it actually was to avoid personal consequences. He may also attempt to take some of the weight off his subordinates— the defendants—by emphasizing his role. Although the government does not contend that Watson committed perjury, and presents no evidence that he may be lying about his claims, *see* Gov't Letter to Def. Counsel Re: Watson, June 2, 2014 (submitted via e-mail), evidence is admissible to show even an unconscious slant, *Abel*, 469 U.S. at 52. Watson's disobedience is one piece of his involvement in the shooting, and the jury should be permitted to weigh each of the pieces, including Watson's disobedience, in assessing his credibility and his conscious or unconscious motivations for making specific claims in this case. The Court finds that Watson's

disobedience is relevant to whether he is a biased witness, and, finding below that the probativeness of this evidence is not outweighed by its prejudice to defendants, *see* III.B, *infra*, determines that it is admissible.

        2.    *Evidence of Defendants' Knowledge of Watson Disobeying an Order Is Not Relevant*

The government also argues that evidence of Watson's disobedience is relevant to the defendants' state of mind at the time of the shooting. Although the government can present evidence that the defendants knew about the order to remain in the Green Zone, *see* Gov't Opp'n 2, 4, the government does not succeed in convincing the Court that this knowledge is relevant to whether defendants' actions were reasonable. The Court accepts *arguendo* that defendants were aware of the order, that they knew they were not supposed to be in Nisur Square. However, such knowledge has no bearing on whether they thought they were being attacked or not. As defendants correctly point out, the government's theory relies on a *planned* insurgent attack *specifically targeting* Raven 23 to retain any cogency. *See* Defs.'s Reply 6-7. Absent any proposed evidence establishing this crucial premise for this specific instance, the Court will assume, based on common knowledge of how insurgents and guerilla fighters generally operate, that the premise that Raven 23 was specifically targeted is faulty. Therefore, the Court finds that defendants' knowledge of Watson's disobedience is not relevant to any issue in this case. Evidence regarding whether defendants heard Watson discussing the order on his cell phone or heard Watson's communications with TOC through the vehicles' speakers will thus be excluded, and the government may not mention or imply defendants' knowledge of the order.

    B.    *Prejudice*

Even if relevant, defendants argue that admitting evidence about Watson disobeying the order not to leave the Green Zone would be unfairly prejudicial to the defendants. "The court

7

may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court balances the probative value of the evidence against the danger of unfair prejudice resulting from its admission. *United States v. Moore*, 732 F.2d 983, 988-89 (D.C. Cir. 1984). It is unquestionably the case" within the D.C. Circuit "that the trial judge's weighing of evidence against the criteria of Rule 403 is a matter within his discretion." *Miller v. Poretsky*, 595 F.2d 780, 783 (D.C. Cir. 1978).

Finding that the probative value of the evidence is not outweighed by its prejudicial effect, the Court concludes that evidence related to Watson's disobedience is admissible. The probative value of the evidence is significant: as discussed above, *see* III.A.1, *supra*, its admission will allow the jury to develop a fuller picture of Watson's involvement in the Nisur Square shooting, and will assist them in determining his credibility and potential bias as a witness. This evidence does not, however, have any probative value as to defendants' charges or claims. The question is then whether the prejudicial effect of the evidence, isolated to Watson, is significant enough to outweigh the evidence's probativeness. Defendants' primary argument is that even if the evidence is limited to Watson, "there is a danger . . . that the jury will conclude . . . that the Defendants . . . are in some way 'guilty by association'"—that because Watson, the commander of Raven 23, disobeyed an order, the entire squad is guilty of disobedience. Defs.'s Reply 10. The Court disagrees. Most laymen are familiar with the command structure of military organizations, and will be able to distinguish between the man who gave the order and his subordinates when it comes to responsibility for an action in a warzone. Moreover, the defense will have ample opportunity to present evidence that defendants "proceeded out of the

8

Green Zone and took up position at Nisur Square under the order of their commander," and that they did not "have any control over that decision," *id.*, which is sufficient to mitigate most of whatever prejudicial effect this evidence might have. Combined with the exclusion of the irrelevant evidence concerning the defendants' knowledge of the order, any prejudice that may result to the defendants will be small and certainly not unfair. However, the Court is sensitive to the potentially prejudicial nature of this evidence should it be carelessly presented, and will make every effort to limit the inclusion of this evidence to where it is relevant.[1] Therefore, evidence of Watson disobeying an order not to leave the Green Zone is not unfairly prejudicial and is admissible.

The Court will also briefly address two concerns raised by the defendants during their arguments against admission under Rule 608(b), but also applicable here: the potential for wasting time and confusing the jury during Watson's examination. *See* Defs.'s Reply 9. Defendants claim that Watson will deny that he disobeyed an order, and the subsequent attempt to disprove or prove what he says will result in a "trial within a trial." *Id.* (quoting *United States v. Whitmore*, 359 F.3d 608, 618 (D.C. Cir. 2004)). Watson's sworn grand jury testimony reads:

> Okay. So, I made the decision, we all know Nick wanted me to stay [in the Green Zone]. I didn't really think about him even telling me that. Hindsight, 20/20, I look at it and *it does seem like I disobeyed a direct command* from Nick Polous, but I felt that it was my tactical decision to do what I did.

Grand Jury Tr. 103, Mar. 14, 2013 (emphasis added), ECF No. 439-2 at 9. There is a clear distinction between what Watson thought at the time he disobeyed the order and what he thinks now, but this distinction does not have any effect on the relevance or potential prejudice of the evidence. Watson clearly agrees now that he disobeyed an order, even if he did not think so

---

[1] To avoid potential unfair prejudice, the government is hereby instructed not use turns-of-phrase such as "when *Raven 23* left the Green Zone in violation of an order." Any mention of an order being disregarded must specifically refer to Watson, leaving defendants out. The Court will sustain defendants' 403 objections should the government attempt to use this piece of evidence to establish or imply the disobedience of Raven 23 as a unit.

9

then. The significance of this will be left to the jury. Notwithstanding these concerns, the Court concludes that it will be relatively simple to ensure appropriate lines of questioning at trial. As such, these considerations also do not bar the admission of evidence of Watson's disobedience.

## IV. CONCLUSION

For the foregoing reasons, the Court will DENY in part defendants' motion to exclude to the extent that it seeks to exclude evidence of Watson disobeying an order not to leave the Green Zone, and GRANT in part defendants' motion to exclude concerning any evidence of defendants' knowledge of Watson's disobedience. A separate order reflecting the relief discussed herein will be issued alongside this opinion.

Date: 6/16/14

Signature: *Royce C. Lamberth*
The Honorable Royce C. Lamberth
U.S. District Court Judge