# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.　　　　　　　　　　　) | Criminal No. 08-360 (RCL) |
| ) | |
| PAUL A. SLOUGH, ) | |
| EVAN S. LIBERTY, and ) | |
| DUSTIN L. HEARD, ) | |
| ) | **FILED** |
| Defendants. ) | |
| ) | JUL 2 9 2014 |

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.　　　　　　　　　　　) | Criminal No. 14-107 (RCL) |
| ) | |
| NICHOLAS A. SLATTEN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the Court is the defendants' motion [*Slough* 532; *Slatten* 91] for reconsideration of the Court's June 16, 2014 Order and Memorandum Opinion [*Slough* 527, 528; *Slatten* 82, 83] excluding the testimony of defense expert witness Don Mikko. Upon consideration of the defendants' motion [*Slough* 532; *Slatten* 91], the government's opposition [*Slough* 571; *Slatten* 127], the defendants' reply [*Slough* 581; *Slatten* 140], the applicable law, the entire record herein, and for the reasons set forth below, the Court will GRANT the defendants' motion for reconsideration.

## I.　　BACKGROUND

As described in the Court's June 16, 2014 Memorandum Opinion, the defendants provided the government with a written disclosure summarizing the expected testimony of

proposed toolmark and munitions expert Don Mikko, among others, on April 25, 2014, as required by Federal Rule of Criminal Procedure 16(b)(1)(C) ("Rule 16"), and pursuant to the Court's Scheduling Order, *United States v. Slough*, 08 Cr. 360 (D.D.C. Mar. 7, 2014), ECF No. 396. Mem. Op., *Slough*, ECF No. 528 at 2 ("Mem. Op."). However, this initial Mikko summary inadequately disclosed his potential testimony. *Id.* at 10-11. Because the trial was slated to begin on June 17—just one day after the Court's Memorandum Opinion was issued—the Court consequently found that the defendants would not satisfy Rule 16's pretrial disclosure requirement as to Mikko and, therefore, Mikko's testimony should be excluded. *Id.* at 11.

Unbeknownst to the Court, the parties had been coordinating Mikko's visit to Washington, D.C., to examine bullets and metal fragments collected from the scene of the September 16, 2007 Nisur Square shooting incident that were housed at the FBI's Washington Field Office. *See* Defs.'s Mot. at 5-8. During this period of direct communication between the parties, the government filed a motion *in limine* to preclude the testimony of a number of defense experts, including Mikko. *Slough*, May 16, 2014, ECF No. 444. As the defendants note, the government's motion *in limine* appeared to acknowledge an understanding that Mikko was "currently seeking to review the ballistics evidence in this case and after which, the government presumes that defendants will supplement their Rule 16 notice with the conclusions that the defense will seek to introduce at trial, at least as it relates to firearms and toolmark identification." Mot. at 6-7 (citing *Slough*, ECF No. 444 at 16 n.1); *see generally* Gov't's Opp'n (not refuting defendants' attribution of this footnote to Mikko).

Following the Court's Memorandum Opinion excluding Mikko's testimony, the defendants "contacted Mr. Mikko to see if he could provide a summary of his additional opinions and conclusions and the bases for those opinions and conclusions that would satisfy Rule 16."

Mot. at 8. Despite some delays during his inspection of the evidence, Mikko presented a summary report of his findings. *Id.* The defendants provided the government with a supplemental disclosure of Mikko's conclusions on June 17, 2014—some hours before the jury was sworn. *Id.* The supplement detailed Mikko's conclusions as to the potential source of the "recovered bullets/fragments." *See* Mot. Ex. A at ¶¶ 1-8. The supplement further referenced Mikko's opinion regarding the tests undertaken by the government's explosives expert Mark Whitworth involving the M203 grenade launcher and M433 grenade rounds. *Id.* at ¶ 9. Mikko's purported opinion concerning Whitworth's tests is based on Whitworth's 2009 report and accompanying notes, as well as Mikko's personal experience, rather than an examination of the physical evidence. *Id.*; *see also* Opp'n at 3-4.

On June 25, 2014, the defendants moved for reconsideration of the Court's June 16 Order excluding Mikko's testimony. *Slough*, ECF No. 532; *Slatten*, ECF No. 91.

## II. LEGAL STANDARD

### A. Motions for Reconsideration in Criminal Cases

While the Federal Rules of Criminal Procedure do not provide for motions for reconsideration in criminal cases, "[s]everal of this Court's colleagues nevertheless have determined that motions for reconsideration may be entertained in criminal cases . . . ." *United States v. Cabrera*, 699 F. Supp. 2d 35, 40 (D.D.C. 2010) (citing cases); *see also United States v. Dieter*, 429 U.S. 6, 8 (1976) (*per curiam*) (noting "the wisdom of giving district courts the opportunity promptly to correct their own alleged errors"). In *United States v. Libby*, Judge Walton adopted the standard of review for motions for reconsideration filed under Rule 59(e) of the Federal Rules of Civil Procedure as the appropriate standard for motions for reconsideration

of final judgments in criminal cases. 429 F. Supp. 2d 46, 46-47 (D.D.C. 2006).[1] However, in *United States v. Sunia*, Judge Walton explained that the "apparent intention in *Libby* was to simply transplant into the criminal context the standard of review for an analogous motion for reconsideration filed in a civil case." 643 F. Supp. 2d 51, 60-61 (D.D.C. 2009).

In civil cases, "[t]he standard of review for interlocutory decisions differs from the standard[] applied to final judgments under Federal Rule[] of Civil Procedure 59(e) . . . ." *Williams v. Savage*, 569 F. Supp. 2d 99, 108 (D.D.C. 2008). Federal Rule of Civil Procedure 54(b) ("Rule 54(b)") permits a district court to revise an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties"—*i.e.* an interlocutory order—"at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Yet Rule 54(b) is silent on the standard of review applicable to motions for reconsideration of such interlocutory orders. "To fill this gap, courts in this district have held that 'relief upon reconsideration [of an interlocutory decision] pursuant to Rule 54(b) is available *as justice requires*.'" *United States v. Coughlin*, 821 F. Supp. 2d 8, 18 (D.D.C. 2011) (quoting *Hoffman v. District of Columbia*, 681 F.Supp.2d 86, 90 (D.D.C.2010)) (second set of internal quotation marks omitted) (emphasis added). "[A]sking 'what justice requires' amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). To determine whether "justice requires" reconsideration of a previously issued interlocutory order, the Court considers whether it "patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts

---

[1] Since the *Libby* decision, judges on this Court have followed suit regarding Rule 59(e)'s application to final judgments in criminal cases. *See, e.g.*, *United States v. Booker*, 613 F. Supp. 2d 32, 34 (D.D.C. 2009) (J. Urbina); *United States v. Ferguson*, 574 F. Supp. 2d 111, 113 (D.D.C. 2008) (J. Kessler).

[has occurred] since the submission of the issue to the Court." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotation marks and citation omitted). "Furthermore, the party moving to reconsider carries the burden of proving that some harm would accompany a denial of the motion to reconsider." *In Def. of Animals v. Nat'l Institutes of Health*, 543 F. Supp. 2d 70, 76 (D.D.C. 2008).

### B. Federal Rule of Criminal Procedure 16

As explained in the June 16 Memorandum Opinion, under Rule 16, the defendants "must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence[, which govern testimony by expert witnesses,] as evidence at trial . . . ." Fed. R. Crim. P. 16(b)(1)(C). "This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id.* Failure to comply with Rule 16 may, at the Court's discretion, result in exclusion of the proposed expert testimony. Fed. R. Crim. P. 16(d)(2)(C).

Part of Title IV of the Federal Rules of Criminal Procedure, which is aptly named "Arraignment and Preparation for Trial," Rule 16 governs *pretrial* discovery and inspection. *See also United States v. Nobles*, 422 U.S. 225, 235 (1975) ("Both the language and history of Rule 16 indicate that it addresses only pretrial discovery."). Therefore, notwithstanding a lack of explicit Rule 16 timing requirements, the Court previously concluded that the expectation that parties make disclosures "in a timely fashion," Fed. R. Crim. P. 16, 1993 advisory committee's note, logically means that such disclosures must occur prior to the start of trial, if not earlier. *See* Mem. Op. at 11.

Rule 16, as related to the disclosure of planned expert testimony, "is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for

continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16, 1993 advisory committee's note. However, the Rule is "not intended to create unreasonable procedural hurdles." *Id.*

## III. ANALYSIS

### A. Mikko's Testimony Relating to Physically Examined Munitions Evidence

#### 1. The Defendants Timely Filed a Pretrial Supplemental Disclosure Regarding Mikko's Expected Testimony that Satisfies Rule 16

In its June 16 Memorandum Opinion, the Court assumed that "even if defendants supplemented their disclosures for [Mikko] to bring them in line with Rule 16's content requirements, the disclosures would not be timely." Mem. Op. at 11. This assumption was based on the fact that trial was slated to commence less than one day from the issuance of the Court's Memorandum Opinion and that the defendants had yet to submit a supplement. However, contrary to this assumption, the defendants provided the government with a supplemental Rule 16 disclosure regarding Mikko's proposed testimony on the morning of June 17, 2014. *See* Mot. Ex. A.

The June 17 supplement is both substantively sufficient and timely. Compared with the deficient April 25 Rule 16 disclosure, Mot. Ex. C, which was compiled *before* Mikko examined the physical evidence, the June 17 supplement presents detailed descriptions of Mikko's examination of bullets and fragments collected from Nisur Square that surely comply with Rule 16's content requirement.[2] Mot. Ex. A at ¶¶ 1-8; *see* Fed. R. Crim. P. 16(b)(1)(C) (the disclosure "must describe the witness's opinions, the bases and reasons for those opinions, and the

---

[2] The Court notes that the defendants misstate the rationale of the June 16 Memorandum Opinion for excluding Mikko's testimony. In no way did the Court imply that the April 25 Rule 16 disclosure as to Mikko was "already [] adequate." *See* Mot. at 10. Indeed, the Court clearly stated the opposite: that the initial disclosure as to Mikko, among others, was "inadequate because [it was] incomplete." Mem. Op. at 10. The defendants only satisfied Rule 16's content requirements once they submitted the June 17 supplement.

witness's qualifications").

Moreover, although the June 17 supplement was provided to the government just hours before the jury was sworn, the supplement was still delivered *pretrial*—consistent with the timeliness expectation embedded within Rule 16, *see* Fed. R. Crim. P. 16, 1993 advisory committee's note. *Cf. Martinez v. Illinois*, 134 S. Ct. 2070, 2075 (U.S. 2014) (noting the "bright-line rule" that "[a] jury trial begins, and jeopardy attaches, when the jury is sworn"). The Court does not hold that timeliness, for purposes of Rule 16 disclosures, is solely determined by whether a submission occurs pretrial. There may, in fact, be instances where disclosure immediately before trial begins would be untimely given a clear need for such disclosure farther in advance of opening statements or the first witnesses called to the stand. But here, the government should have expected that the defendants would provide Mikko's supplement quite close to the start of trial. After the defendants had notified the government of a week-long delay in Mikko's planned arrival in Washington, D.C., the government, which required Mikko to travel and bring his own inspection equipment to the FBI's Washington Field Office, permitted Mikko to conduct his on-site examination of the evidence from June 2 through June 4, 2014. *See* Mot. at 5-6. While the defendants likely overstate the "schedule negotiated cooperatively with the government" regarding Mikko's examination of the physical evidence, *compare* Mot. at 10, 11, *and* Defs.'s Reply at 2, *with* Opp'n at 2, the fact that the supplement would take another thirteen days to prepare post-inspection should not have come as such a shock to the government.

Given the "significant change in the . . . facts" that resulted from the provision of the supplemental Rule 16 disclosure to the government before the start of trial, *Singh*, 383 F. Supp. 2d at 101, the Court, upon this motion for reconsideration, will no longer exclude Mikko's expert testimony as to the physical evidence he examined.

## 2. Admitting Mikko's Munitions Testimony Does Not Prejudice the Government

The government argues that "[t]o now allow the defendants to introduce [Mikko's] testimony . . . would be unfairly prejudicial to the government." Opp'n at 2-3. The government asserts that possessing the knowledge that Mikko's testimony would be introduced "would have significantly affected the government's opening statement in addressing" the issue of alleged incoming fire to the Raven 23 convoy. *Id.* at 3. The Court finds this claim unconvincing for two reasons.

First, the length of this trial is expected to surpass four months and Mikko, a defense witness, will not be testifying sooner than two months after the government delivered its opening statement. The notion that the government's inability to reference Mikko's proposed testimony in its opening statement will distort the government's case in any meaningful way is exaggerated.

Second, the government certainly understood the defendants' "theory of the case" to be that "there was incoming fire from multiple insurgents" during the September 16, 2007 shooting incident at Nisur Square. *See* Mot. at 3. The government cannot claim to be surprised that the defendants would put on testimony regarding the presence of incoming fire. Indeed, the government referenced purported evidence of incoming fire on at least three instances during its opening statement. Trial Tr. 62:13-15, 66:24-67:14, 68:10-20, June 17, 2014. That the government did not specifically refer to Mikko's proposed testimony does not prejudicially alter the overall argument against potential self-defense claims that the jury received during the government's opening statement.

Moreover, the Court does not doubt that excluding Mikko's testimony would cause harm to the defendants' case. *See In Def. of Animals*, 543 F. Supp. 2d at 76 (burden on moving party

to demonstrate that "some harm would accompany a denial of the motion to reconsider"). Mikko's testimony as to the existence of bullets from foreign-made weapons "goes to the heart of" the defendants' self-defense theory. *See* Mot. at 3, 16 ("Mr. Mikko will provide non-cumulative, exculpatory evidence that directly supports the defense theory of the case and contradicts the government's theory."). Thus, granting the defendants' motion for reconsideration with respect to Mikko's testimony concerning bullets and metal fragments found at the scene of the Nisur Square shooting incident is proper.

### B. Mikko's Testimony Relating to the M203 Grenade Launcher

#### 1. The Defendants Timely Filed a Pretrial Supplemental Disclosure Regarding Mikko's Expected Testimony that Satisfies Rule 16

The defendants' disclosure of Mikko's testimony as to the M203 grenade launcher and M433 grenade rounds satisfied Rule 16's requirements only once they provided the June 17 supplement to the government.[3] Despite the fact that Mikko's grenade launcher-related testimony does not derive from an examination of the physical evidence, this submission was timely since, as similarly discussed above, it occurred pretrial and the government fairly should have expected counter-testimony during the defendants' case-in-chief—predicted to occur two months after opening statements—regarding the government's prosecutorial claims about the defendants' alleged use of grenade launchers.

#### 2. Admitting Mikko's M203 Testimony Does Not Prejudice the Government

The government argues that disclosing Mikko's purported opinion regarding the grenade launcher and rounds immediately before the start of trial contravened Rule 16's intent "to

---

[3] The defendants argue that Mikko's expected M203 testimony "was disclosed in [their] original Rule 16 disclosure for Mr. Mikko." Reply at 6. But the April 25 disclosure—that Mikko's testimony "may include information about the safe and effective ranges, the kill casualty radius, firing characteristics and other mechanical features" of the M203, Mot. Ex. C at 1-2—is a far cry from disclosing Mikko's specific intention to impeach portions of the purported opinion of the government's M203 expert, Mot. Ex. A at ¶ 9.

minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Opp'n at 4 (citing Fed. R. Crim. P. 16, 1993 advisory committee's note). But given the natural expectation that the defendants would attempt to counter the government's grenade launcher claims, the government's assertion of surprise is disingenuous. Furthermore, the government's contention that "the timing of the defendants' disclosure" will prevent the government from "meaningfully arrang[ing] for additional testing to be conducted in the middle of its case-in-chief" by its expert Whitworth is equally unconvincing. *See id.* As the trial enters its seventh week, the government has yet to call Whitworth. Thus, the government's proposed expert has had sufficient time to conduct any additional testing it deemed necessary to respond to Mikko's proposed testimony. More than one month following the June 17 supplement, any potential insecurity regarding Whitworth's testimony that the Mikko disclosure has caused the government is a problem that lies with the government, not the defendants.

As long as he is properly qualified during voir dire as an expert in the area of M203 grenade launchers, Mikko will be entitled to opine on Whitworth's methods of testing.[4] Fed. R. Evid. 702.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the defendants' motion [*Slough* 532; *Slatten* 91] for reconsideration of the Court's June 16, 2014 Memorandum Opinion and Order [*Slough* 527, 528; *Slatten* 82, 83] excluding the testimony of defense expert witness Don Mikko. As such, Mikko is permitted to testify during the defendants' case-in-chief.

---

[4] Of course, the scope of Mikko's testimony regarding the M203 grenade launcher must be limited to his expertise regarding the testing methods employed by Whitworth, and cannot veer into a discussion of physical evidence he has not examined.

A separate Order consistent with this Memorandum Opinion shall issue this date.

7/29/14
Date

ROYCE C. LAMBERTH
United States District Judge