FILED

DEC 22 2017

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )
)
v. ) Criminal Case No. 14-107 (RCL)
)
NICHOLAS A. SLATTEN, )
Defendant. )

## MEMORANDUM OPINION:
## FINDINGS OF FACT AND STATEMENT OF REASONS IN SUPPORT OF PRETRIAL DETENTION

This matter comes before the Court on Defendant Nicholas Slatten's Motion for Release Pending Trial. ECF No. 693. Mr. Slatten seeks release pending trial pursuant to 18 U.S.C. § 3142 and requests that the pretrial conditions of release set by the Court on May 13, 2014, be restored. In the alternative, he requests that additional conditions be imposed to ensure he appears for his trial. The government opposes Mr. Slatten's release and urges that he remain detained pending trial given that "there are no conditions or combinations of conditions that will reasonably assure the appearance of the defendant as required or the safety of any other person and the community." ECF No. 695 at 1-2. Upon consideration of the pleadings, the oral representations of both parties at the detention hearing, the relevant legal authorities, and the record as a whole, the Court finds that Mr. Slatten is not eligible for release at this time. Accordingly, the Court **WILL DENY** Mr. Slatten's Motion for Release Pending Trial.

**I.    BACKGROUND**

As this case has been summarized on numerous occasions—most recently by the Court of Appeals in *United States v. Slatten*, 865 F.3d 767, 810–11 (D.C. Cir. 2017)—the Court will only

1

offer a brief outline of the factual and procedural background, with a focus on the facts most relevant to Mr. Slatten's Motion for Release.

Mr. Slatten and his codefendants were security contractors for Blackwater Worldwide ("Blackwater") in 2007, at which time Blackwater provided security services to the U.S. State Department in Iraq. *Slatten*, 865 F.3d at 776. Mr. Slatten and his codefendants were members of Raven 23, a Blackwater support team. On September 16, 2007, Raven 23 was called upon to evacuate a U.S. diplomat in Baghdad. In the course of that mission, the Raven 23 team attempted to "lock down" Nisur Square, a traffic circle in downtown Baghdad. In doing so, at least 31 Iraqi civilians were injured or killed.

On December 4, 2008, the government indicted Mr. Slatten and his codefendants for manslaughter, attempted manslaughter, and a firearms charge, all related to their conduct at Nisur Square on September 16, 2007. Following the indictments, the court released Mr. Slatten pending trial and set a number of conditions. After a year on pretrial release, during which time the case was moved from the District of Utah to this Court, Judge Urbina dismissed the charges on February 22, 2010.

Following the D.C. Circuit's reversal in *United States v. Slough*, 641 F.3d 544 (D.C. Cir. 2011), the government indicted Mr. Slatten and his codefendants on substantially similar charges on October 17, 2013. Mr. Slatten was once again released pending trial. That period of supervision came to an end on April 23, 2014, when the charges were dropped for a second time against Mr. Slatten as a result of them being time barred.

Two weeks later, on May 8, 2014, a grand jury returned a third indictment against Mr. Slatten—this time for first-degree murder. For a final time, he was released pending trial. Trial

2

began soon thereafter and a jury found Mr. Slatten guilty of first-degree murder on October 22, 2014, at which point he was detained.

Mr. Slatten appealed and on August 4, 2017, the D.C. Circuit issued an opinion vacating his conviction, finding that the Court erred in not allowing Mr. Slatten to introduce statements by his co-defendant in a separate trial. *Slatten*, 865 F.3d at 810–11. The D.C. Circuit held that co-defendant Slough's statements, made shortly after the attack at Nisur Sqaure to State Department officials, were admissible under Federal Rule of Evidence 807—the residual hearsay exception—because they were "were vital to Slatten's defense and possessed sufficient circumstantial guarantees of trustworthiness." *Slatten*, 865 F.3d at 801. As such, Mr. Slatten's case should have been severed to allow him to present that evidence. *Id.* The D.C. Circuit issued the mandate on November 16, 2017.

The Court held an initial status hearing in this matter on November 21, 2017, at which point the government expressed its intention to retry this case. On December 1, 2017, Mr. Slatten moved for his release pending trial pursuant to 18 U.S.C. § 3142. Following the government's response and Mr. Slatten's reply, the Court held a hearing on the motion on December 15, 2017.

## II. LEGAL STANDARD

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, provides that a defendant may be detained pending judicial proceedings if the district court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* at § 3142(e), (f). The government must first establish one of the predicates: (1) that, beyond a preponderance of the evidence, defendant poses a risk of flight, *United States v. Xulam*, 84 F.3d 441, 443 (D.C. Cir. 1996); or (2) that, by clear and

convincing evidence, defendant has been shown to pose a risk to the safety of any person or the community, 18 U.S.C. § 3142(f); *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). The Court must then determine that the same evidence leads to the conclusion that no condition or conditions of release will reasonably protect against the risk that has been found.

The district court weighs the following four factors in making its determination: "[1] the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; [2] the weight of the evidence against the person; [3] various personal information including character, employment, past conduct, and so on; and [4] the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996) (internal quotations omitted) (citing 18 U.S.C. § 3142(g)).

### III. DISCUSSION

As an initial matter, the Court must address Mr. Slatten's contention that "Section 3142(f) prevents the government from reopening Slatten's original detention determination." ECF No. 697 at 1. The relevant portion of 3142(f) provides as follows:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). According to Mr. Slatten, his initial detention determination on the present charge was made by the Court on May 13, 2014. At that time—which was a few days after Mr. Slatten was indicted on the murder charge and weeks before the start of trial—the Court ordered Mr. Slatten released pending trial on personal recognizance with a number of conditions attached. See ECF No. 11. According to Mr. Slatten, the government is now basing its

4

conclusion that Mr. Slatten must be detained on evidence that was already known to the government at the time of the detention determination on May 13, 2014. Therefore, he argues that "[u]nder the law [18 U.S.C. § 3142(f)], none of that evidence can be the basis for reconsidering Slatten's detention, and Slatten should therefore be released." ECF No. 697 at 107. Essentially, Mr. Slatten posits that the Court is barred from reconsidering Mr. Slatten's detention and must reinstate the terms set before his trial in May 2014.

At the hearing before the Court on December 15, 2017, the government responded that this is the first detention hearing on the murder charge against Mr. Slatten. The government does not understand the teleconference hearing before the Court on May 12, 2014, to have been a detention hearing. Therefore, Section 3142(f) does not apply as the Court does not need to reopen any hearing; rather, it is ruling on detention for the first time on this particular charge. As such, the Court can consider any information, including his numerous arrests and dangerous actions and threats prior to his trial in 2014. *See* ECF No. 695 3-11.

However, the Court does not need to resolve whether the hearing on May 12, 2014, was a detention hearing. Even if the Court adopts Mr. Slatten's argument—that the terms of his release set in May 2014 can only be reexamined if there is newly discovered information—there is more than enough new information that has come to light allowing the Court to reconsider his detention. First and foremost, Mr. Slatten stood trial on his murder charge and the Court had the opportunity to hear the evidence against him. A jury convicted him on that charge and he has already served more than three years in custody since his trial. Those facts alone "have a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). In fact, the D.C. Circuit case cited by Mr. Slatten for the

proposition that a court can "reopen the detention hearing when previously nonexistent, material information [is] brought to light," *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988), speaks directly to this issue. In *Peralta*, the D.C. Circuit ruled that district court was authorized to revoke the defendant's bond and order him detained, after having been previously released pending trial. *Id.* The D.C. Circuit held that the district court's ruling against the defendant at a suppression hearing constituted "previously nonexistent, material information" sufficient to "reopen the detention hearing." *Id.*

If the outcome of a suppression hearing is enough to reexamine a detention finding, certainly the fact that Mr. Slatten stood trial and was convicted is sufficient to reopen his detention hearing. The Court heard weeks of testimony that spoke to his danger to the community. Furthermore, as the government notes, the defendant now knows that the evidence presented at trial was strong enough for a jury to convict—a fact that speaks to whether he is a greater flight risk. Mr. Slatten argues that none of this is relevant because the D.C. Circuit vacated his conviction and ordered a new trial in which he can present potentially exculpatory statements from Mr. Slough. But while the conviction was vacated, the Court in detention hearing proceedings can still consider any and all relevant information, including the fact of a trial having occurred, the fact of a conviction having being rendered, and the facts presented at trial. These newly discovered facts provide the Court with clear justification to reopen a detention hearing.

Even if that were not sufficient evidence to reopen a detention hearing, the government also stipulated at the December 15, 2017, hearing that there were two incidents involving Mr. Slatten that were not known to the government nor the Court when the Court made its initial

6

detention determination in May 2014. The government summarized the two incidents as follows:

- "On May 16, 2012, a police report indicates that during a phone call to a pharmacy regarding the denial of his request for a prescription refill, the defendant asked the employee if she knew who he was dealing with and told her to read the newspaper and watch the news. After having his doctor approve the refill, the defendant went to the pharmacy and told the employees that he would file a lawsuit but made no additional threats." ECF No. 695 at 6.
- "On May 8, 2014, the defendant was also charged with obtaining by fraud Alprazolam, a Schedule IV controlled substance, on or about April 22, 2014. According to the Office of the Clerk for White County, Tennessee, this case was ultimately dismissed on or about March 11, 2015, after the defendant was convicted in the case before this Court." *Id.* at 10.

These newly discovered incidents provide to the Court additional evidence warranting a reexamination of the original detention determination. The incidents display a willingness to threaten others and a disregard for rules. Simply put, there is more than enough information warranting a reopening of the detention hearing. As such the Court will proceed to analyze under the four statutory factors whether Mr. Slatten should be detained pending trial. *See generally United States v. Hite*, 76 F.Supp.3d 33 (D.D.C. 2014) (ruling that the four factors favored detention pending retrial even though the defendant had been released pending his first trial).

*A. Nature and Circumstances of the Offense Charged*

The charge against Mr. Slatten weighs heavily in favor of detention. Mr. Slatten is charged with first-degree murder. That is quite obviously a serious charge on a crime of violence. Mr. Slatten faces life imprisonment if convicted on this charge. In an ordinary case, a charge of this magnitude would provide a defendant with strong incentive to flee. *See United States v. El Hage*, 213 F.3d 74, 80 (2d Cir. 2000) (prospect of life imprisonment creates strong motive to flee). Mr. Slatten argues that he already faced this charge once while he was released and did in fact show up for trial. He further contends, and provides letters from friends and family indicating, "that there is no way that [he] 'would ever run' from the chance to clear his name." ECF No. 697 at 7 (internal citations omitted).

However since Mr. Slatten was last on pretrial release he has been convicted by a jury on a first-degree murder charge. He's faced the reality of a life sentence in prison. Given that new information, the Court must consider his statement to police officers on August 20, 2012 in a new light. As the government explains in its pleading Mr. Slatten was stopped by two officers because he was "was acting suspiciously, walking with a holster and loaded clips on his person." ECF No. 695 at 7. The government described the incident that transpired as follows:

> Two officers ultimately approached the defendant to investigate, and the defendant was uncooperative and belligerent from the start. The defendant was handcuffed, and the officers removed two pistols and several 30-round magazines from the defendant's person with 45-caliber ammunition as well as four pocket knives. The defendant said that he had served in the military and that he had a valid carry permit. Upon learning that one of the officers had called his girlfriend to check on her welfare due to a suspected domestic abuse incident, the defendant became upset and said that he was not "going back to jail." The defendant also said that they would need 12 more officers [presumably to subdue him] and that "**he would rather take a round to his face than go back to jail.**" (Emphasis added). After the officers confirmed that the defendant had a valid permit for the firearms, and the girlfriend did not cooperate and refused to admit that anything had happened, the officers released the defendant and no charges were filed.

*Id.* at 6-7. While it is true that the Court was aware of this incident when it released Slatten pending his first trial, it must reconsider this information in light of the fact that Mr. Slatten has

8

since been convicted by a jury and started serving a life sentence. Even though his conviction was vacated, Mr. Slatten was still forced to come to terms with the fact that a jury convicted him and that he was sentenced to life in prison. Actually experiencing that, as opposed to the theoretical possibility he felt before his first trial, increases the risk that he will not be present for his next trial, even though he can now present Mr. Slough's statements. As the Ninth Circuit indicated in *United States v. Gebro*, the defendant's "knowledge of the fact that he was sentenced to a lengthy period of incarceration makes it more likely that he will flee." 948 F.2d 1118, 1122 (9th Cir.1991). In *Gebro*, the defendant (prior to reversal of his conviction) faced 132 months in prison. *Id.* at 1119. Here, Mr. Slatten's charge carries a mandatory life sentence. As such, the risk of flight is considerable. Accordingly, the Court finds that this factor weighs heavily in favor of Mr. Slatten's detention pending trial—both because of the flight risk and the fact that a first-degree murder charge indicates that Mr. Slatten is a danger to others.

### B. Weight of the Evidence

The weight of the evidence against Mr. Slatten also supports his detention. This case is unique from other detention proceedings as the Court does not need to rely on government proffers or evidence presented at a suppression hearing. The Court heard all of the evidence first-hand. While it is true that the Court's determination of this factor "neither requires nor permits a pretrial determination of guilt," *Gebro*, 948 F. 2d 1121, the Court can still weigh the evidence and determine whether it proves that the defendant poses a risk to others and/or is at risk of flight. 18 U.S.C. § 3142(g).

The Court finds that the weight of the evidence against Mr. Slatten remains strong. At trial, the jury believed the evidence was strong enough to find that he committed first-degree murder beyond a reasonable doubt. All of the evidence that the original jury heard will likely be

admissible at the new trial. The only difference is that Mr. Slough's hearsay statements will also be admissible in the new trial. The effect that those statements will have on the jury is speculative. The Court notes that there are many reasons to doubt Mr. Slough's statements, including that Mr. Slough himself made inconsistent statements. As the government argues, many of Mr. Slough's statements are contradicted by evidence that was presented at the last trial. ECF No. 695 at 14-15.

So evidence sufficient to convict Mr. Slatten will be presented at trial. There will also be presented exculpatory evidence whose effect on the jury is speculative. As between evidence that has already proved to be sufficient to convict and untried evidence, the Court finds that the "weight of the evidence" factor cuts in favor of detaining Mr. Slatten pending trial.

*C. History and Characteristics of Mr. Slatten*

This factor also favors detention. The letters that Mr. Slatten submitted to the Court from friends and family attesting to his good character speak to the "deep ties [he] has to the community." ECF No. 697 at 697. And by all accounts, Mr. Slatten has been on good behavior in prison since his conviction. However, the Court must weigh this evidence against the evidence presented by the government related to Mr. Slatten's several confrontations with law enforcement and other persons since 2011. The government describes seven separate incidents leading up to Mr. Slatten's trial in 2014:

1. June 2011 arrest for firing a handgun and an attempt to evade arrest;
2. November 2011 arrest for aggravated assault while armed;
3. Threatening a pharmacy employee in May 2012 (described by the Court at pg. 6-7);
4. July 2012 confrontation with an officer;

5. August 2012 investigative stop for possession of firearms and ammunition (described by the Court at pg. 8);

6. Combative attitude towards U.S. pretrial personnel from January to February 2014;

7. May 2014 arrest for obtaining drugs by fraud (described by the Court at pg. 7)

*See* ECF No. 695 3-11. The Court agrees with the government that all of these instances—which include an assault, numerous threats, and possession of firearms[1]—taken together indicate that Mr. Slatten poses a threat to others if released before trial. The Tennessee probation officer responsible for his pretrial supervision deemed him a "security risk" and that "it would not be safe for officers to have contact with him." ECF No. 696-1 at 5. The Court also believes that his behavior reflects a pattern of disregard for rules and authority, indicative of a heightened risk that he might flee if released pending trial.

Mr. Slatten contends that all of these instances occurred prior to the Court's determination in May 2014 that he could be released pending trial. And at that point in time, the Court did not determine that he was a risk to others or at risk of flight. However, as previously discussed, all of this evidence can be considered differently in light of the fact that Mr. Slatten was convicted by a jury of first-degree murder. For example, his pattern of confrontational behavior with law enforcement and others takes on a new meaning considering a jury found beyond a reasonable doubt that he committed first-degree murder. And his claim that "he would rather take a round to his face than go back to jail" cannot be ignored now that he knows what it

---

[1] To be clear, Mr. Slatten's possession of firearms during the incidents described by the government was neither illegal nor a violation of his pretrial release conditions (since he was not on pretrial release at the time). But it is still relevant to the Court's analysis of the danger he poses to others because he possessed those firearms while confronting police officers and others and at one time brandished a gun in the course of committing an assault. ECF 695 at pg. 6.

11

feels like to start serving a life sentence. Therefore, even though there are certain elements of this factor that weigh in favor of Mr. Slatten, the totality of the evidence tips in favor of detention pretrial.

### D. Nature and Seriousness of Danger Also Favors Detention

For all the reasons described herein, the Court believes that Mr. Slatten poses a danger to others. The Court agrees that the instances described by the government between 2011 and 2014 indicate that Mr. Slatten is prone to confrontation and known to have been in possession of weapons at times of confrontation. Moreover, the evidence at trial was sufficient to find that Mr. Slatten committed first-degree murder. Accordingly, the Court finds this factor weighs in favor of detention pending trial.

### E. Balancing of the Factors

Upon consideration of these factors, the Court concludes that there are no conditions or combination of conditions that would reasonably assure Mr. Slatten's appearance at trial or that would eliminate the risk he poses to others. The first three factors described above demonstrate by a preponderance of the evidence that Mr. Slatten poses a risk of flight. Specifically, the first two factors, the nature of the offense charged and the weight of the evidence, weigh heavily in favor of detention. Mr. Slatten is about to stand trial on a first-degree murder charge, faces a mandatory life sentence, and knows that the evidence at his first trial was enough for a jury to find him guilty. He's already spent more than three years in a federal facility. And while it is true that he already faced the possibility of a life sentence and showed up for trial the first time, "there is a significant difference between being aware of a potential sentence and actually beginning to serve the sentence after it has been imposed." *Hite*, 76 F.Supp.3d at 41-42. The Court finds that in this case the risk of flight is heightened and that electronic monitoring will not

suffice. *See U.S. v. Townsend*, 897 F.2d 989, 994-95 (9th Cir. 1990) (finding that wearing an electronic device cannot assure against flight). Mr. Slatten has stated that "he would rather take a round to his face than go back to jail." ECF No. 695 at 7. Now that he has faced the reality of a life sentence, the Court does not believe he should be given the opportunity to take matters into his own hands.

The Court's finding regarding Mr. Slatten's risk of flight is sufficient to support detention pending retrial. But the Court also finds that the balancing of the factors establishes by clear and convincing evidence that Mr. Slatten poses a risk to others. To begin with, Mr. Slatten stands accused of first-degree murder—clearly a crime of violence. To be sure, he was previously released on this very charge in May 2014. But at this point, the Court cannot ignore that Mr. Slatten stood trial on this charge and the evidence was sufficient for a jury to find him guilty. That fact is certainly mitigated by the Court of Appeal's decision to vacate his conviction and allow him to present Mr. Slough's statements—statements that are potentially critical to his defense. However, as previously discussed, the impact that evidence will have on the jury is still speculative at this stage. And the Court already knows that there was enough evidence in the past case to find him guilty of a crime that reflects his danger to the community.

The Court does not need to stop there. The Court can consider other evidence beyond the charged crime. The government presented seven independent dangerous acts committed by Mr. Slatten between 2011 and 2014. Among those events was an arrest in July 2011 for firing a handgun and attempting to evade arrest. The police reported that Mr. Slatten argued with them, resisted handcuffs, stated that he could kill them if he wanted to, and noted that they would pay for what they were doing. ECF No. 695 at 5. In another instance that is emblematic of Mr. Slatten's danger to the community, he was arrested in November 2011 for aggravated assault and

13

ultimately found guilty of simple assault. Again, the evidence reflected that Mr. Slatten was in possession of a firearm during the confrontation. *Id.* at 5-6. The other five examples also feature confrontations and threats by Mr. Slatten to law enforcement officials, probations officers, and other persons. *Id.* at 3-11. In short, when viewing those actions in light of what the Court learned about Mr. Slatten at trial, the evidence indicates that Mr. Slatten has a history of confrontations (often while armed) when he is out of prison. Accordingly, the Court finds that no conditions can protect others in the community if Mr. Slatten is released pending trial. *See U.S. v. Smith*, 79 F.3d 1208, 411 (D.C. Cir. 1996) (ruling that the district court did not err when it found the defendant—who was charged with first-degree murder, armed robbery, and weapons and narcotics charges—was a danger to the community).

## IV. CONCLUSION

For the reasons stated herein, the Court finds by a preponderance of the evidence that no combination of conditions will ensure Mr. Slatten's appearance at trial. The Court further finds by clear and convincing evidence that Mr. Slatten poses a danger to others and that no combination of conditions can protect against that risk. Accordingly, the Court **WILL DENY** Mr. Slatten's Motion for Release Pending Trial. A separate Order consistent with this Memorandum Opinion shall issue this date.

SIGNED this 22nd day of December, 2017.

Royce C. Lamberth
United States District Judge