UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **United States of America** | ) ) ) | |
| v. | ) ) | Criminal No. 14-107 (RCL) |
| **Nicholas A. Slatten,** | ) ) | |
| Defendant. | ) ) | |

### DEFENDANT SLATTEN'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION OR, IN THE ALTERNATIVE, FOR DISCOVERY

This case comes to this Court on remand following Defendant Nicholas A. Slatten's vindication of his right to present exculpatory evidence on his behalf. This is now the second time that the D.C. Circuit has sided with Mr. Slatten during his defense of this ten-year-old case. After the government's earlier loss in mandamus proceedings in the D.C. Circuit, the government upped the ante against Mr. Slatten by charging him with the first-degree murder of Ahmed Haithem Ahmed Al Rubia'y, the driver of a white Kia sedan—a crime that carries a mandatory life sentence. Mr. Slatten moved to dismiss the indictment for vindictive prosecution. In the most recent appeal, the D.C. Circuit held that "the unusual, high-profile, and potentially embarrassing context surrounding Slatten's mandamus petition" supports a presumption that the government's decision to charge Mr. Slatten with first-degree murder was vindictive. *United States v. Slatten*, 865 F.3d 767, 800 (D.C. Cir. 2017). The Court of Appeals held, however, that the government's inability to prosecute Mr. Slatten for any offense other than first-degree murder rebutted the presumption of vindictiveness. *Id.*

Recent developments show that the government's continued prosecution of Mr. Slatten for the increased charge of first-degree murder cannot possibly be justified by a legitimate desire to punish Mr. Slatten for a crime. The trial team that decided to indict Mr. Slatten for first-degree murder now has access to the repeated statements of Mr. Slatten's co-defendant, Paul Slough, that he shot the driver of the white Kia, and the D.C. Circuit has held those statements to be admissible. And following the D.C. Circuit's decision, another co-defendant, Evan Liberty—who has a powerful incentive to cooperate with the government in the hope of obtaining a reduced sentence—informed the government through his counsel that Mr. Slough, and not Mr. Slatten, shot the driver of the white Kia. There can no longer be any serious doubt that someone other than Mr. Slatten killed Mr. Rubia'y.

The government's continued prosecution of Mr. Slatten, in the face of this new exculpatory evidence, for the increased charge of first-degree murder following his successful mandamus petition and appeal violates due process. It sends a message that would deter defendants from asserting their rights—if you challenge the government and win, you could be prosecuted for an offense carrying a life sentence that the government should know you did not commit. We respectfully request that this Court put an end to the government's unjust prosecution of Mr. Slatten and dismiss the indictment.

I.   **THE GOVERNMENT'S CONTINUED PROSECUTION OF MR. SLATTEN FOR FIRST-DEGREE MURDER IS VINDICTIVE.**

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (internal quotation marks omitted). The doctrine of vindictive prosecution derives from this fundamental principle. Vindictive prosecution "refers to a situation in which the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory

rights." *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987). The doctrine reflects a recognition that prosecutors are "but human" and thus may have "a motivation to engage in self-vindication." *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011) (per curiam) (internal quotation marks omitted).

A defendant may establish vindictive prosecution in one of two ways. First, a defendant may show "actual vindictiveness"—that is to say, the defendant "may prove through objective evidence that a prosecutor acted in order to punish him for standing on his legal rights." *Meyer*, 810 F.2d at 1245 (internal quotation marks omitted). Second, a defendant may attempt to establish a presumption of vindictiveness. *Id.* "[W]hen the facts indicate a realistic likelihood of vindictiveness[,] a presumption will arise obliging the government to come forward with objective evidence justifying the prosecutorial action." *Id.* (internal quotation marks omitted) (second alteration in original). The rationale for the presumption of vindictiveness is "not grounded upon the proposition that actual retaliatory motivation must inevitably exist." *Blackledge v. Perry*, 417 U.S. 21, 28 (1974) (quotation omitted). Instead, the Supreme Court has explained, "since fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation." *Id.* (internal quotation marks omitted). To establish the presumption when charges are increased before trial, "a defendant must provide additional facts sufficient to show that all of the circumstances, when taken together, support a realistic likelihood of vindictiveness." *Slatten*, 865 F.3d at 799 (internal quotation marks omitted). If the government rebuts the presumption with objective evidence, the defendant must "prove that the justification is pretextual and that actual vindictiveness has occurred." *Meyer*, 810 F.3d at 1245.

It cannot be disputed that the government "upped the ante" against Mr. Slatten by charging him with first-degree murder, a crime carrying a mandatory life sentence, after his successful mandamus petition. *United States v. Korey*, 614 F. Supp. 2d 573, 584 (W.D. Pa. 2009) (holding that reindictment for a crime with a guideline sentence of life imprisonment constituted vindictive prosecution); *see also United States v. Jamison*, 505 F.2d 407, 413-17 (D.C. 1974) (finding that reindictment of the defendants for first-degree murder following a mistrial on a charge of second-degree murder constituted vindictive prosecution). As the D.C. Circuit held, that decision to charge Mr. Slatten with first-degree murder following "the extraordinary mandamus grant" in this case gives rise to a presumption of vindictiveness. *Slatten*, 865 F.3d at 799. The D.C. Circuit's extraordinary mandamus grant in a "high-profile" case such as this one was "potentially embarrassing" to the government. *Id.* at 800. Those circumstances, the Court held, are "additional facts that support the finding of a presumption" in this case. *Id.* (internal quotation marks omitted).

Having found that the exceptional circumstances of this case support a presumption of vindictiveness, the D.C. Circuit next concluded that the government had rebutted the presumption because the D.C. Circuit's grant of Mr. Slatten's mandamus petition "left the government with no alternative but to charge him with murder." *Id.*; *see also id.* (referring to "the government's desire to see the crime punished"). It thus affirmed this Court's decision denying Mr. Slatten's motion to dismiss the indictment. *Id.* at 801.

Recent events that were not part of the record on the previous motion for vindictive prosecution compel a different conclusion on remand:[1]

---

[1] Mr. Slatten is unaware of a case in the District of Columbia where the government upped the ante after a defendant's first appeal (in this case, a mandamus petition) and then continued to prosecute the increased charge after a second successful appeal. In the extraordinary circumstances of this case, where the government is now in possession of substantial evidence exonerating Mr. Slatten, it is appropriate to ask whether the government's continued prosecution

*First*, the government has lost yet again in the D.C. Circuit—this time, after a multi-month trial that led to Mr. Slatten's (now-overturned) conviction.  Unlike when this Court previously considered this issue, the case now stands in a post-conviction context, when there is a "danger that the State might be retaliating against the accused for lawfully attacking his conviction." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).

*Second*, the prosecutors that decided to indict Mr. Slatten did not have access to Mr. Slough's four post-incident statements admitting to shooting the driver of the white Kia.  In the week following the events in Nisur Square on September 16, 2007, Mr. Slough confessed no fewer than four times to shooting the white Kia driver:

- **September 16 Statement:**  "A white vehicle approached the team at a high rate of speed and would not stop despite his hand signals and throwing a water bottle.  Other civilians tried to wave the vehicle down, but it still would not stop.  SLOUGH engaged and hit the driver."  Ex. A.

- **September 18 Statement:**  "As our motorcade pulled into the intersection I noticed a white four door sedan driving directly at our motorcade from the west bound lane.  I and others were yelling, and using hand signals for the car to stop and the driver looked directly at me and kept moving toward our motorcade.  Fearing for my life and the lives of my teammates, I engaged the driver and stopped the threat."  Ex. B.

- **September 20 Statement:**  "A white car was moving north on Jinub Street toward the motorcade, and SLOUGH gave commands for the driver to stop.  The car did not stop, and SLOUGH engaged it with his M4.  SLOUGH is not sure whether he was the first one to fire during this incident.  He is not aware of any shots being fired before his.  The car kept moving straight toward the motorcade without braking.  SLOUGH used one magazine of M4 ammunition to engage the white car."  Ex. C.

- **September 23 Statement:**  "Slough made eye contact with the driver of the white sedan whom he described as being an Arabic male in his late 20's with a

---

of the increased charge following a second successful appeal is vindictive, even if the D.C. Circuit has held that the initial decision to charge Mr. Slatten with first-degree murder was not.  The D.C. Circuit has declined to adopt inflexible "*per se*" rules governing vindictive-prosecution claims; rather, the question in every case is whether the facts create a "'realistic likelihood of vindictiveness.'" *Meyer*, 810 F.2d at 1246 (quoting *Goodwin*, 457 U.S. at 384).

> beard. The vehicle did not heed Slough's and the other pedestrian's warnings. Slough fired two rounds at the driver from his M-4 rifle. Slough believes these rounds impacted the driver's area of the windshield." Ex. D.

Mr. Slough's statements, which could not be used against Mr. Slough under *Kastigar v. United States*, 406 U.S. 441 (1972), were not available to the trial team at the time of the decision to charge Mr. Slatten with first-degree murder. Nor were they made available to the grand jury that indicted him or the jury that convicted him.

In recent discussions with undersigned counsel, the government's counsel have sought to downplay the import of Mr. Slough's confessions. But, as the D.C. Circuit found, Mr. Slough's confessions bear "sufficient circumstantial guarantees of trustworthiness" and "***strike at the heart***" of the government's case against Mr. Slatten. 865 F.3d at 801, 803 (emphasis added). In a moment of candor that exposes the government's displeasure at having lost Mr. Slatten's appeal (again), in a conversation with undersigned counsel the government's counsel dismissed the D.C. Circuit's ruling as the musings of judges sitting in an "Ivory Tower." That is nonsense: the Court's decision sensibly recognizes that "the circumstances surrounding [Mr. Slough's] declarations indicate their reliability and manifest that he was likely telling the truth at the time he made his statements." 865 F.3d at 808. And Mr. Slough's credible admissions are corroborated by other evidence at the first trial—including, notably, the testimony of Iraqi police officers Ali Ghalaf Salman Mansur Al-Hamidi and Sarham Dheyab Abdul Monem, both of whom described Mr. Slough as the person who first shot the driver of the white Kia. *See id.* at 809.

*Third*, after the appeal, the government had a conversation with counsel for Evan Liberty, a former co-defendant, about whether Mr. Liberty would speak with the government. According to Mr. Liberty's counsel, Mr. Liberty would testify that he "knows that [Mr. Slatten] did not shoot at the white Kia occupied by victim Ahmed Al Rubia-y in Nisur Square on September 16, 2007." Ex. E (Letter from Martin to Connolly *et al.*); Ex. F (E-mail from Martin to Latcovich). In

6

particular, Mr. Liberty would testify that he knows, "based on the timing of events, that another member of Raven 23 [*i.e.*, Mr. Slough] had already engaged the white Kia." Ex. E. The government conveyed this information to undersigned counsel by letter dated February 16, 2018. Ex. E; *see also* Ex. F. Mr. Liberty, of course, has not yet been resentenced following the D.C. Circuit's reversal of his sentence. *See Slatten*, 865 F.3d at 820. He has every incentive to cooperate with the government in the hope of obtaining a reduced sentence on remand. The existence of that incentive renders all the more credible and powerful his counsel's statement that his testimony would exculpate Mr. Slatten.

In sum, the government now possesses a substantial body of credible evidence proving that Mr. Slatten was not the person who shot the driver of the white Kia. By contrast, the government's evidence against Mr. Slatten is "weak" at best, as the government itself previously recognized. *See* ECF No. 23-1, at 8. No witness testified that Mr. Slatten shot the driver of the white Kia; no witness testified that Mr. Slatten confessed to doing so; and no forensic evidence connects Mr. Slatten to the white Kia.

Given the events that have transpired since the D.C. Circuit decided the recent appeal, the government can no longer rebut the presumption of vindictiveness that has been held to exist in this case. It cannot be said that the government's interest in prosecuting Mr. Slatten for the increased first-degree murder charge is to punish Mr. Slatten for the alleged crime. Furthermore, the new evidence reveals that purported interest to be "mere pretext." *Slatten*, 865 F.3d at 767. Only one conclusion can reasonably be drawn from the government's protracted attempt to put Mr. Slatten in prison for life for a shooting to which someone else has confessed: the government's "human" prosecutors are embarrassed by the government's repeated failings in this case and are punishing Mr. Slatten for his successful efforts to vindicate his rights. *Safavian*, 649 F.3d at 692.

For these reasons the Court should dismiss the indictment for vindictive prosecution.

**II.     IN THE ALTERNATIVE, MR. SLATTEN IS ENTITLED TO DISCOVERY ON VINDICTIVE PROSECUTION.**

In the alternative, and at a minimum, Mr. Slatten is entitled to discovery related to the government's decision to charge Mr. Slatten with first-degree murder and to continue prosecuting him for first-degree murder on remand—in particular, the government's charging memoranda. Discovery related to vindictive prosecution is available when a defendant comes forth with "some evidence tending to show the existence of the essential elements of the defense." *United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989); *see also United States v. Bucci*, 582 F.3d 108, 113 (1st Cir. 2009) (adopting a "some objective evidence" standard (internal quotation marks omitted)). The D.C. Circuit has already held that Mr. Slatten presented sufficient evidence to establish a presumption of vindictiveness. The government should therefore be compelled to produce all charging memoranda related to Mr. Slatten and any documents related to its decision to continue prosecuting Mr. Slatten on remand to enable Mr. Slatten to rebut the government's assertion that its decisions have been motivated by legitimate interests.

**III.    MR. SLATTEN RENEWS HIS PREVIOUSLY FILED MOTION TO DISMISS THE INDICTMENT FOR VINDICTIVE PROSECUTION.**

Finally, and in the alternative, Mr. Slatten respectfully renews his original motion to dismiss the indictment for vindictive prosecution. Mr. Slatten acknowledges that the D.C. Circuit held on appeal that the government had rebutted the presumption of vindictive prosecution in this case. Nevertheless, in an abundance of caution to ensure that his right to seek further appellate review regarding vindictive prosecution is preserved, Mr. Slatten renews his motion to dismiss the indictment for vindictive prosecution. In support of this motion, Mr. Slatten incorporates by reference, as if originally filed and lodged in this matter, the Motion to Dismiss for Vindictive

Prosecution, and accompanying briefing, exhibits, and arguments, that was filed by Mr. Slatten in *United States v. Slatten*, No. 14-cr-107, ECF No. 23.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | /s/ Amy Mason Saharia |
| March 30, 2018 | Dane Butswinkas (DC Bar No. 425056) |
|  | Tobin Romero (DC Bar No. 461273) |
|  | Simon Latcovich (DC Bar No. 980319) |
|  | Amy Mason Saharia (DC Bar No. 981644) |
|  | Krystal Commons (DC Bar No. 987768) |
|  | WILLIAMS AND CONNOLLY LLP |
|  | 725 Twelfth Street, N.W. |
|  | Washington, DC 20005 |
|  | Telephone: (202) 434-5000 |
|  | Facsimile: (202) 434-5029 |
|  |  |
|  | Thomas G. Connolly (DC Bar No. 420416) |
|  | HARRIS, WILTSHIRE & GRANNIS LLP |
|  | 1919 M Street, N.W., 8th Floor |
|  | Washington, DC 20036 |
|  | Telephone: (202) 730-1300 |
|  | Facsimile: (202) 730-1301 |
|  |  |
|  | *Attorneys for Defendant Nicholas A. Slatten* |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2018, a copy of this filing was delivered via ECF on all counsel of record in this matter.

/s/ Amy Mason Saharia
Amy Mason Saharia