UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                           |   |                              |
|---------------------------|---|------------------------------|
| UNITED STATES OF AMERICA  | ) |                              |
|                           | ) |                              |
| v.                        | ) | Criminal Case No. 14-107 (RCL) |
|                           | ) |                              |
| NICHOLAS A. SLATTEN,      | ) |                              |
| Defendant.                | ) |                              |

## MEMORANDUM OPINION

Before the Court is defendant Nicholas Slatten's motion *in limine* to exclude evidence of post-Kia shootings and victims. ECF No. 716. Mr. Slatten argues that the evidence should be excluded because it is irrelevant and unduly prejudicial. Upon consideration of the pleadings, the oral representations of both parties at the hearing on May 9, 2018, the relevant legal authorities, and the entire record in this case, the Court **DENIES** Mr. Slatten's motion.

### I. BACKGROUND

As this case has been summarized on numerous occasions—including recently by the Court of Appeals in *United States v. Slatten*, 865 F.3d 767, 810–11 (D.C. Cir. 2017)—the Court will only offer a brief outline of the factual and procedural background, with a focus on the facts most relevant to Mr. Slatten's motion *in limine*.

Mr. Slatten and his former codefendants were security contractors for Blackwater Worldwide ("Blackwater") in 2007, at which time Blackwater provided security services to the U.S. State Department in Iraq. Mr. Slatten and his former codefendants were members of Raven 23, a Blackwater support team. On September 16, 2007, Raven 23 was called upon to assist in evacuating a U.S. diplomat in Baghdad. In the course of that mission, the Raven 23 team attempted

1

to "lock down" Nisur Square, a traffic circle in downtown Baghdad. In doing so, at least 32 Iraqi civilians were injured or killed.

At the first trial, the government proved that Mr. Slatten fired the first shots that day at the head of the driver of the white Kia sedan, Ahmed Haithem Ahmed Al Rubia'y, who died as a result. The jury found Mr. Slatten guilty of first-degree murder, the sole charge filed against him at the first trial. The jury also found his codefendants guilty on separate manslaughter and attempted manslaughter charges for an additional 30 deceased or wounded victims. Mr. Slatten appealed and on August 4, 2017, the D.C. Circuit vacated his conviction, finding that the Court erred in not allowing Mr. Slatten to introduce hearsay statements by his codefendant in a separate trial. *Slatten*, 865 F.3d at 810–11. The government is now retrying Mr. Slatten on the same single-count Indictment for first-degree murder.

## II.     LEGAL STANDARD

While neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence expressly provide for motions *in limine,* the Court may allow such motions "pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984). Motions *in limine* are "'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" *Graves v. District of Columbia,* 850 F.Supp.2d 6, 10 (D.D.C. 2011) (quoting *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1070 (3d Cir. 1990)). The Court has the "discretion to rule *in limine* or to await developments at trial before ruling." *Graves v. District of Columbia,* 850 F.Supp.2d 6, 11 (D.D.C. 2011) (*citing* Stephen A. Saltzburg *et al.,* FEDERAL RULES OF EVIDENCE MANUAL § 103.02[13] (9th ed. 2006)). And "in some instances it is best to defer rulings until trial, [when] decisions can be better informed by the

context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." *Casares v. Bernal*, 790 F.Supp.2d 769, 775 (N.D.Ill.2011) (citation omitted).

## III. DISCUSSION

Mr. Slatten seeks to exclude all evidence "relating to alleged shooting and victims in Nisur Square after the shooting of the white Kia." 14-cr-107, ECF No. 716 at 1. He does not articulate particular pieces of evidence within that category of evidence, but rather argues that none of it is relevant to the single charge against him. He further contends that even if the evidence has some probative value, that value is outweighed by the prejudicial effect it will have on the jury. The Court disagrees. The evidence is in fact probative and the Court is unwilling to say that every piece of evidence within the category of evidence that Mr. Slatten seeks to exclude will be unfairly prejudicial.

### A. Relevance

Under the Federal Rules of Evidence, "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevant evidence is admissible" unless the Constitution, federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court, provide otherwise. Fed. R. Evid. 402. According to Mr. Slatten, evidence that other members of Raven 23 shot other individuals in Nisur Square after the shooting of Mr. Al Rubia'y in the white Kia—the single count Mr. Slatten is charged with—is irrelevant to his case. The government offers three theories of relevance, which the Court will address in turn.

First, the government contends that "certain post-Kia evidence is probative of Defendant's premeditation and motive." ECF No. 730 at 5. To satisfy its burden on the charge in this case, the government must present evidence to prove that Mr. Slatten acted with premeditation. "[T]he

3

government must introduce facts which provide proof beyond a reasonable doubt that a crime was committed not merely intentionally, in sustained frenzy or heat of passion, but with premeditation and deliberation." *United States v. Peterson*, 509 F.2d 408, 412 (D.C. Cir. 1974). A court can "entertain probative circumstantial evidence from which to infer premeditation and deliberation." *Id.* And proof of a defendant's motive "substantially reinforces the inference of premeditation and deliberation." *Mills v. United States*, 599 A.2d 775, 781 (D.C. 1991).

Here, the government's theory is that "while traffic was at a standstill waiting for the Blackwater convoy to exit the Square, Slatten fired two shots from a sniper rifle into the Kia windshield, killing Al-Rubia'y instantly and setting into motion the day's horrific events." *Slatten*, 865 F.3d at 795. The government argues that Mr. Slatten's "motive for killing the Kia driver was, in part, to initiate the Raven 23 barrage that followed" and that the "[p]ost-Kia evidence about the subsequent onslaught of bullets and grenades is thus relevant evidence of Defendant's premeditation and deliberation." ECF No. 730 at 5. As the government did at the last trial, it plans to present evidence that Mr. Slatten disdained the Iraqi people, had a history of shooting Iraqis to instigate a broader conflict, and in fact encouraged other Blackwater members to engage in similar conduct. Moreover, the government will try and prove that once Mr. Slatten shot Mr. Al Rubia'y, he called attention to the subsequent movement of the white Kia to draw fire from his Blackwater team members. And that following the events at Nisur Square that day, Mr. Slatten celebrated, further confirming the government's theory that he had a plan which he was seeking to execute.

Under this theory of the case, the Court agrees that evidence of post-Kia shooting and victims is probative. Evidence that a plan succeeded is probative of the existence of a plan in the first place. The government must prove premeditation. Here, they allege that Mr. Slatten's goal in firing the first shots was to set in motion the very events that followed. Presenting evidence of

4

the events that followed does make the fact that he acted with premeditation more probable. It is not necessarily strong evidence or dispositive—that is for the jury to weigh. But evidence need not be dispositive of an element of the crime to be relevant, it must merely cross the low threshold prescribed by Rule 401. Moreover, the evidence of what transpired at Nisur Square puts his alleged celebration into context and further bolsters the theory that he had a plan, which played out, and that he celebrated that plan. Mr. Slatten cites two cases— *United States v. Cardall*, 885 F.2d 656, 671-72 (10th Cir. 1989) and *United States v. Hernandez*, 780 F.2d 113, 118 (D.C. Cir. 1986)—for the supposition that evidence of the fact "that other Raven 23 members engaged in later shootings is not admissible to show Mr. Slatten's state of mind at an earlier time." ECF No. 733 at 3. But those cases are inapposite. In both cases, the government sought to bring in evidence under a Rule 404(b) theory of admissibility.[1] And the courts in those cases found the evidence inadmissible under that theory because they did not involve the defendant's own actions. Here, the government, unlike in those cases, is not looking to bring the evidence in under Rule 404(b), nor indicating that the evidence relates to Mr. Slatten's own prior actions. The cases simply do not apply.

The government's second theory of relevance is that post-Kia shooting evidence is relevant to the elements of self-defense and mitigating circumstances. The evidence will be used to prove that Mr. Slatten faced no threats that day from insurgents in Nisur Square.

Mr. Slatten responds in two ways. First, he argues that the government can call witnesses to testify that they did not see anyone shooting or any threats before the shooting of the white Kia. "Excluding the post-Kia evidence therefore would not impede the government's ability to carry its

---

[1] In *Hernandez*, the D.C. Circuit also found that the evidence, even if relevant, would not be permissible under Rule 403. 780 F.2d at 118. The Court will address the issue of unfair prejudice in the next section. Here, the question is whether the evidence is relevant.

5

burden on this issue." ECF No. 733 at 5. Second, Mr. Slatten points out that the Court instructed the jury at the first trial that the question of self-defense turned on "the circumstances as they appeared to [the defendant] at the time of the incident." ECF No. 177 at 17. Therefore, in his view, evidence of shootings that occurred after the shooting of the white Kia is irrelevant to the elements of self-defense and mitigating circumstances. Both arguments are without merit.

While the government can certainly call witnesses to testify that they saw no shooting to rebut self-defense, that does not mean it cannot introduce other probative evidence to prove that point as well. "Because the Government bears the burden of proof on every element of a charged offense, it must be accorded substantial leeway to submit evidence of its choosing to prove its case." *Old Chief v. United States*, 519 U.S. 172, 200 (1997) (Connor, J., dissenting). The critical question is whether the evidence is probative, not whether there is other evidence that might also help carry the government's burden. Here, the government is right that evidence that Raven 23 members fired upon Iraqis for 10-15 minutes straight without any return fire is probative in showing that the Square was insurgent free. The government avers that witnesses will explain they saw no armed combatants firing at the Blackwater team members, and they looked for armed combatants based on where the Blackwater team members were firing. It is logical to conclude that the lack of return fire, even in the face of heavy incoming fire (including grenade fire), has a "tendency" to make it "more" probable that there were no reasonable threats to Mr. Slatten at the time that he allegedly fired the first shots at the white Kia.

Third, the government seeks to introduce post-Kia shooting evidence to rebut Slough's statements, which the D.C. Circuit held can be introduced at retrial. The government notes that Slough's statements go to the issue of identity. He stated that the Kia sped toward the convoy and that he was therefore forced to fire upon it. In essence, it calls into question whether Slough or

Slatten fired the shots that killed Mr. Al Rubia'y. The government maintains that at the retrial, it plans to bring evidence to demonstrate the falsity of Slough's statements. Part of demonstrating that Slough lied about whether the white Kia was speeding is "educating the jury about what was at stake for Slough when he gave his statement, namely, accountability for an unprovoked massacre: 32 Iraqis killed or wounded in Nisur Square." ECF No. 730 at 11.

Mr. Slatten contends that he only seeks to introduce Slough's statement about the white Kia, which "contain the entire universe of facts that would bear on an alleged motivation falsely to label the Kia a threat." ECF No. 733 at 6. In other words, Slough had motive to lie about the speeding Kia because he admitted to shooting at it. What happened after the fact is irrelevant. But just because his admission that he shot at the white Kia provides a motive for lying does not mean there are no other facts that would bolster his motivation to lie. That an additional 31 people were killed or injured provides further reason for Slough to lie. The gravity of the situation provided motive to falsify the threat, in addition to the motive he might have felt to lie based on his admission that he shot at the white Kia. Therefore, providing the jury with the full context of what transpired after the white Kia shooting is probative of whether Slough was lying and accordingly whether Slough or Slatten fired the initial shots at the white Kia.

### B. Prejudice

Even if relevant, Mr. Slatten argues that admitting evidence about post-Kia shootings and victims would be unfairly prejudicial. Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice...." Fed. R. Evid. 403. "The language of this rule tilts, as do the rules as a whole, toward the admission of evidence in close cases." *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984). In performing the Rule 403 balancing test, "it is a sound rule that the balance should generally be struck in favor of

7

admission when the evidence indicates a close relationship to the event charged." *Id.* (quoting *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978)).

Mr. Slatten's present motion is not limited to particular pieces of evidence that the government might introduce regarding post Kia shootings and victims. Rather, he argues that *any* evidence about those events and victims would substantially outweigh the probative value. His primary argument seems to be that if the Court allows the government to produce any evidence related to the actions of the other Raven 23 members after the white Kia shooting, then he would be at risk of "guilt by association." He primarily relies on three cases in support of that argument. However, each case is distinguishable from the facts before the Court.

In *Hernandez*, the D.C. Circuit held that the district court abused its discretion in admitting evidence of a defendant's presence at a fight involving his codefendant. The D.C. Circuit's primary reason for reaching that conclusion was that the defendant was not a "participant" in the fight and it was therefore not admissible against him as a "prior bad act" under Rule 404(b). 780 F.2d at 118. But the court continued that if it were to find that the defendant was a participant in the fight, "it would be involvement of the most attenuated type" and that "[s]uch attenuated evidence" would be of "slim probative value" and "overwhelmed by its prejudicial effect." *Id.* And that "[a]dmission of such evidence would naturally lead a jury to assume that Lopez-Leyva had the motive of his associates: a slightly refined version of guilt by association." *Id.* It is plain that the D.C. Circuit in *Hernandez* held the probative value of the evidence in weak regard; it characterized the evidence as showing "nebulous involvement in a prior bad act." *Id.* The Court does not read *Hernandez* to hold that any possible evidence pertaining to acts of codefendants fails under Rule 403. Here, as the Court has articulated, there are numerous reasons why the evidence has probative value. The evidence goes not only to motive, but the elements of self-defense and

mitigating circumstances, and identity. The acts after the shooting of the white Kia are part of a continuous shooting event and are relevant to multiple elements of the government's burden of proof. Ultimately, the jury weighs the strength of the evidence, but at this stage the Court is not of the opinion that the evidence is "attenuated" or "nebulous" such that the prejudicial effect of any reference to the post-Kia events would substantially outweigh its probative value.

In *United States v. Sampol*, defendant Ignacio Novo was indicted and tried on two counts of making false statements to a grand jury and one count of misprision of a felony. 636 F.2d at 642. He was tried alongside members of a conspiracy to assassinate the former Chilean ambassador to the United States and an associate, even though he was not alleged to have been a member of the conspiracy. *Id.* The D.C. Circuit overturned Novo's conviction, finding that the joint trial was improperly prejudicial to him. *Id.* at 643. The court based its conclusion on the three factors, only two of which are relevant to this case. *Id.* at 651.

The first factor that the court considered was whether "the confusion of the charges that resulted from the indictment and evidence at trial" led to unfair prejudice to the defendant. *Id.* the court was particularly concerned that the indictment and the evidence elicited at trial made it appear as if Novo was involved in the conspiracy. *Id.* at 645. One witness even testified that Novo "possibly" participated in the conspiracy. *Id.* Here, similar issues are not at play. Mr. Slatten has not raised any concerns about the indictment and the government's theory is that Mr. Slatten set off the chain of events after firing upon the white Kia. Mr. Slatten has not highlighted any particular concerns for the Court to rule upon that a government witness will suggest that he took any part in the ensuing shootings.

The second factor cited by the *Sampol* court is also distinguishable. The court was concerned about the "likelihood of prejudice brought about by the joint trial on charges of

assassination with such grossly disparate charges as false statement and misprision." *Id.* Novo's codefendants were not merely charged with "negligent homicide [] or reckless manslaughter" but with "participating in an intentional and extremely violent assassination scheme, the gory details of which were described with extreme accuracy to the jury." *Id.* at 646. Novo, on the other hand, was charged with far less serious offenses and because he was jointly tried it led to an outcome where it was "unrealistic to expect a jury not to be influenced by such extraneous testimony in its assessment of his guilt upon the lesser charges for which he was tried." *Id.* at 647. Here, Mr. Slatten is charged with first-degree murder, a far more serious offense than those facing Novo. The Court does not believe that allowing the government theories to introduce the post-Kia evidence for the limited purposes previously articulated will have the effect of "transfer[ing] guilt to Mr. Slatten. *Id.*

In *United States v. Fulmer*—the third case Mr. Slatten relies on—the defendant was charged with threatening a federal agent. 108 F.3d 1486, 1489 (1st Cir. 1997). At trial, the federal agent testified about the Oklahoma City bombing, which had taken place a week before the defendant's alleged threats, and was relevant to the agent's state of mind when he heard the threats. *Id.* at 1498. The First Circuit found that the evidence should not have been admitted under Rule 403, since the probative value of the evidence was "slight" and the danger of unfair prejudice was "tremendous." *Id.* The facts in *Fulmer* bear no resemblance to the case before the Court. In *Fulmer*, the bombing had no connection to threats made by the defendant and the charge of threatening a federal agent paled in comparison to evidence about a terrorist attack that led to the death of over 150 people. Here, Mr. Slatten is charged with first-degree murder and the post-Kia evidence pertains to events that took place immediately after Mr. Slatten's alleged actions.

In sum, the cases cited by Mr. Slatten are not controlling. And admitting any evidence about post-Kia shootings and victims will not automatically create a "guilt by association" situation. As such, the Court is unwilling at this stage to say that *any* evidence about post-Kia shootings and victims would unfairly prejudice Mr. Slatten. That is not to say that there are not pieces of evidence within that body of evidence that would be unfairly prejudicial. The government itself concedes that it plans to limit certain graphic images and testimony. But Mr. Slatten has not made such a request at this time. In his motion, he requested complete exclusion of post-Kia evidence, arguing that all of the evidence is irrelevant and unfairly prejudicial. For the reasons already stated, the Court disagrees. But, the Court reserves judgment on whether certain specific pieces of evidence would be irrelevant or fail under Rule 403. Mr. Slatten has not made particularized requests at this point and the Court will not hypothesize about what may be unfairly prejudicial.

## IV. CONCLUSION

For the foregoing reasons, the Court will **DENY** defendant's motion to exclude evidence of post-Kia shootings and victims. A separate Order consistent with this Memorandum Opinion will issue this date.

SIGNED this 23rd day of May, 2018.

　　　　　　　　　　　　　　　　　　Royce C. Lamberth
　　　　　　　　　　　　　　　　　　United States District Judge